## Case No. 16,021.

UNITED STATES v. PEARCE et al.

[2 Sumn. 575.] [1]

Circuit Court, D. Massachusetts. May Term, 1837.

COLLECTORS OF CUSTOMS—EMOLUMENTS—REMOVAL FROM OFFICE.

The act of congress of 1822, c. 107 [3 Stat. 693], provides, that whenever the emoluments of certain collectors of the customs "shall exceed $3,000 in any one year, &c. the excess shall in every such case be paid into the treasury of the United States." The defendant was collector of the port of Gloucester, and was removed from office July 29th, 1829. From January 1st of the same year to the day of his removal, he had received for salary, fees, and commissions $3,457.83; the excess of this over $3,000, after deducting certain legal expenses, he paid to the treasury of the United States. Held, that all the fees and commissions received by the collector are to be deemed to be received for his own use, until they exceed the maximum amount of $3,000; that the defendant was, therefore, absolutely entitled, in his own right, to the fees and emoluments of office, not exceeding $3,000, received during the seven months preceding his removal, although he did not continue in office a whole year from January 1st: and that the year of his successor in office commenced on the day of his appointment, and ended with the same day in the succeeding year.

[Cited in Hooper v. Fifty-One Casks of Brandy, Case No. 6,674; U. S. v. Wendell, Id. 16,666.]

[Error to the district court of the United States for the district of Massachusetts.]

Debt by the United States upon the official bond of the collector of the port and district of Gloucester, in Massachusetts. Plea, non est factum. At the trial the jury found a verdict for the plaintiffs for the sum of $1,157.67, upon which judgment was rendered in the district court of Massachusetts district in favor of the plaintiffs. [Case unreported.] There was a bill of exceptions taken at the trial by the plaintiffs, upon which the present writ of error was brought. From that bill of exceptions it appeared, that the defendant,

[1] [Reported by Charles Sumner, Esq.]

William Pearce, (the time of whose appointment did not appear,) was collector of the customs for the port of Gloucester, in 1829, and was removed from that office, by the president, on the 29th of July of the same year. Between the 1st day of January of the same year and the day of his removal from office, he had received, for salary, fees and commissions, the sum of $3,457.83, of which $144.70 was for salary, $473.35 for fees, and $2,839.78 for commissions. From this aggregate sum there was deducted the sum of $216.62 for official expenses during that period, and the sum of $241.21 paid over by Pearce to the treasurer of the United States. The balance, $3,000, Pearce claimed a right to retain as the maximum compensation for his services for the year 1829. The United States allowed to Pearce the sum of $1,736.41, the maximum compensation from the 1st of January, 1829, to the time of his removal from office, and insisted upon their right to the balance ($1,263.28). And the district attorney, at the trial, accordingly prayed the district judge so to instruct the jury; which instruction the district judge refused to give; and instructed the jury, that Pearce had a right, by law, to retain the whole of the said sum of $3,000 for his compensation from the 1st of January, 1829, to the day of his removal from office; and the jury, accordingly, in their verdict disallowed this claim of the United States.

J. Mills, U. S. Dist. Atty.

R. Choate, for defendant.

STORY, Circuit Justice. The only question, arising upon this writ of error, is upon the instruction given to the jury by the learned judge of the district court, as set forth in the bill of exceptions. The question, then, is, whether this instruction is correct in point of law; and the solution of it depends upon the true interpretation of the statutes of the United States upon this subject. The only statutes upon this subject are the statute of 1799, c. 129, § 2 [1 Story's Laws, 664; 1 Stat. 704, c. 23], and the statute of 1822, c. 107 [1 Stat. 693]. The former statute provides for the payment to the collectors of the customs of certain fees and emoluments for their own use, the fees to arise from certain specified official acts and papers, and the emoluments to arise from a certain specified per centage on all moneys received by them on account of duties on goods imported, and on the tonnage of ships and vessels. And, in addition to the allowances above mentioned, it further provides, that certain collectors (among whom is the collector of the port of Gloucester) shall be annually paid the sum of $250. In another section it further provides, that, when a collector shall die, or resign, the commissions, to which he would have been entitled on the receipt of the duties bonded by him, shall be equally divided between him, or his personal representative, and his successor, whose duty it shall

be to collect the same. It is very clear, that, under this statute all the fees and emoluments (exclusive of the salary, which would be governed by other principles,) actually received by any collector, during his continuance in office, would belong to him for his own use, notwithstanding his subsequent removal from office within the same official year. And unless the statute of 1822, c. 107, has made some different provision, changing this result, it is equally clear, that the United States have no title to demand the balance, which they now seek to recover from Pearce, the collector. We are, therefore, driven to the consideration of this last statute. After having limited, in the 8th section, the emoluments of the collectors of the ports of Boston, New York, Philadelphia, Baltimore, Charleston, Savannah, and New Orleans, to a certain sum, the statute proceeds, in the 9th section, to provide, "that whenever the emoluments of any other collectors of the customs shall exceed $3,000, in any one year, after deducting therefrom the necessary expenses incident to his office in the same year, the excess shall, in every such case, be paid into the treasury of the United States." Now, in point of fact, Pearce has paid all the excess over the $3,000, received by him in the year 1829, into the treasury for the use of the United States. So that, in a literal sense. he has complied with the very terms of the act. But the argument for the United States is, that the $3,000 is intended by the statute as the maximum compensation for the services of the collector for the whole year; and that consequently, if he serves only for a part of the year, he is entitled at most only to a compensation pro rata for the proportionate period, less than a year, of his services. Now, assuming the first branch of the argument to be true in a general sense, there is nothing in the statute, which sustains the latter dependent branch, and authorizes a pro rata compensation for the services of the collector for a part only of the year. If he is entitled to such compensation, it is, because an equity is superinduced upon the statute, not comprehended by its terms, or its professed objects, but flowing from the general principles of natural justice. On the other hand, if we are to construe the language of the statute according to the natural import of the words, as founded upon, and not superseding the provisions of the same act, there is no necessity for any such superinduced equity. All the fees and commissions, received by the collector, are to be deemed to be received for his own use, until they exceed the maximum amount of three thousand dollars: and the excess only, afterwards received, belongs to the government. So, that until he has received $3,000, whatever he receives is for his own sole use without farther account; and there is not a word in the statute, which justifies the conclusion, that, what he has received primarily for his own use, is afterwards, by any subsequent events, to be treated as received for the use of the government. The language of the statute forbids any such interpretation. It declares, that the excess beyond the maximum amount, and not any portion received below that sum, shall belong to the United States. The right, or trust, attaches to the excess, and not to the whole sum received.

If the argument be well founded, then, if Pearce had received during his continuance in office only $500, for his salary, fees, and emoluments; and afterwards his successor in office had received $2,500 before the close of the same year (1829), Pearce would nevertheless, have been entitled to one moiety of the $3,000; that is to say, $1,000 beyond the fees and commissions, which accrued during the time, in which he was collector. Such a doctrine has never been maintained in any judicial tribunal; and. I presume, has never yet been asserted by the government. For, in effect, it would be to transfer from the collector for the time being the fees and emoluments, given to him by the very terms of the statute of 1799, c. 23, to another person, who was not the collector, when those fees and commissions accrued. But, let us put the case a little farther, and suppose, that the new collector, after having thus received $2,500 in the year 1829, should, during the residue of his first official year up to the time when his predecessor was removed, and he was appointed in his stead, have received only $500 more; then he would be entitled, according to the strict terms of the law, to retain the $500 for himself. But, according to the argument, he would be entitled to the $3,000, subject to the deduction of the $1,000 belonging to his predecessor; that is to say, he would be entitled to $2,000 only. Surely this cannot be a safe or just interpretation of the statute.

Again, suppose Pearce, before his removal from office, had received for salary, fees, and commissions $2,500 only. In such a case there would be no excess received by him while in office, in any one year; and, under such circumstances, the terms of the statute would not reach his case. He would be entitled to retain the $2,500. Why? Because the statute of 1799, c. 23, the only one, which gives him the right, gives the fees and emoluments to him for his own use, as soon as they accrue.

The truth is, that the statute of 1799, c. 23 (and in this respect it stands wholly untouched and unrepealed), gives to the collector fees and commissions for certain acts and services performed officially by him, as a compensation therefor. When the services are performed, and not till then, the right attaches; and all that the act of 1822, c. 107, professes to do, is to limit the aggregate amount of those fees and commissions (together with the fixed salary) to the maximum of $3,000, and to make the excess, received by the collector, a trust fund for the United States. This is the natural and appropriate meaning

of the language. But the argument for the United States would give the fees and commissions, in many cases, not to the collector, who performed the services; but to another collector, by whom they had not been performed. And this not only in the case of a vacancy by a voluntary act of the collector, such as his resignation, and the case of a vacancy by inevitable accident, as his death; but also in case of a vacancy occasioned by the direct power of the executive in removing him from office. So that the collector, who has borne the burthen, and performed the service, is to yield up his rights, not to the government, as a case of excess, but to his fortunate and unburthened successor. Well might he exclaim in such a case, in the language of the poet, on another occasion, "Sic vos non vobis. Hos feci versiculos; tulit alter honores."

Besides; in my judgment, the true interpretation of the statute applies, and can apply, in its language only to one and the same collector. The words are, "whenever the emoluments of any other collector shall exceed $3,000 in any one year, the excess shall, in every such case, be paid into the treasury." The statute does not look to the case of two different collectors within any one year, or join them together for any period of a year. When does the year of any collector begin and end in the sense of the statute? Plainly, in my judgment, it begins on the day of his appointment, and ends with the same day of the succeeding year. It has nothing to do with the beginning or end of the official year of his predecessor, or with that of the calendar year. If the statute meant, what the argument supposes, its language would have been very different. It would have declared, that the emoluments of the collector or collectors of any other port shall not, in the aggregate, exceed in any one year, calculated from the 1st day of January and to the 31st day of December of the same year, the sum of $3,000; and when there shall be more than one collector of the same port in any one year, the emoluments of the whole year shall be apportioned among them pro rata, according to their respective terms of service. Now, this is the true scope of the argument; and upon the slightest examination it is apparent that it is not possible, by any straining of language, to bend the words of the statute to such an import. In short, the court would be making a new statute, instead of construing an old statute, by such an interpretation. I am not bold enough to undertake such an enterprise. It may be, that there would be more wisdom in such a provision, than there is in the existing law (though it may well be doubted). But that is a matter for the consideration of congress, and not for courts of justice. The case of a commission merchant, who is to receive a compensation for selling goods at a given per centage, not to exceed in the whole a given sum, which has been put by the district attorney, is certainly very much in point. But it is only changing the actors, and not the drama. It is the argument of idem ad idem, resolving itself into the old maxim of antiquity, "Nil agit exemplum litem, quod lite resolvit."

Upon the whole, my opinion is, that by the statute, the collector, who receives, while in office, the fees and emoluments of his office, not exceeding $3,000, is absolutely entitled to them in his own right, whether he continues in office during the whole year or not. The judgment of the district court is, therefore, affirmed.